IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CHRISTINA MARQUEZ, | ) | C/A No. 2:14-cv-02139-BHH-MGB |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff Christina Marquez, appearing *pro se*, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on her July 21, 2011 applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). See Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).

**Procedural History and ALJ's Findings**

The Plaintiff was born January 21, 1979, and was 29 years old on the alleged onset of disability date, August 25, 2008. (R. 140.) The Plaintiff filed for DIB and SSI on July 21, 2011. (R. 140, 148.) The Plaintiff claimed disability due to multiple fractures to her right arm and hand and injuries to her right rotator cuff resulting from an auto accident. (R. 31-32.) Following a hearing, the Administrative Law Judge (ALJ) denied her claim on May 31, 2013. (R. 17.) The Plaintiff has exhausted her administrative remedies. The ALJ's decision is now the

Commissioner's final action for purposes of judicial review. In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ's May 31, 2013 Decision (Id.):

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> (2) The claimant has not engaged in substantial gainful activity since August 25, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: multiple fractures of the right arm; and right rotator cuff injury (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can perform occasional handling with her right upper extremity.
>
> (6) The claimant is capable of performing past relevant work as a manager of fast food restaurant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from August 25, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## Applicable Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

---

[1] "[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, C/A No. 9:12-CV-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing Emberlin v. Astrue, C/A No. 06-CV-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert ("VE"). Id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

**1. The ALJ's Residual Functional Capacity ("RFC") Assessment**

"[R]esidual functional capacity is the most [the Plaintiff] can still do despite [her] limitations."[1] Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (quoting 20 C.F.R. §§ 404.1545(a)). In assessing a claimant's physical abilities for RFC purposes, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions…, may reduce [the claimant's] ability to do past work…." 20 C.F.R. § 404.1545.

The ALJ's RFC assessment of the Plaintiff is supported by substantial evidence. The only impairments claimed by the Plaintiff are the injuries she received in an automobile accident in August of 2008. (Dkt. No. 31 at 6; R. 31-33.) The ALJ assessed she was able to perform medium work with impairments to her right upper extremity. (R. 15.) This assessment allowed her to be capable of returning to light work as a manager of a fast food restaurant. (R. 16.) The ALJ based his assessment on her hearing testimony, medical records following her accident, a consultative examination, and the Plaintiff's abilities in her daily life. (R. 15-16.)

The evidence in the record more than substantially supports the ALJ's decision. At the hearing, the Plaintiff testified she could "probably" lift 25 pounds with her left hand and could carry her 25 pound three year old "for a few minutes." (R. 37; 39.) She testified she could lift light objects "like a bag of trash" with her right hand. (R. 39.) She stated after "a few hours of doing whatever" she needs to "sit down for ten to fifteen minutes." (R. 40.) She testified she has no trouble standing, walking or sitting. (R. 37.) She does all of the housework and cooking in her home. (R. 36.)

---

[1] The Plaintiff is mistaken in her argument that the ALJ erred when he focused "on what [she] can do with [her] left arm." (Dkt. No. 31 at 15.)

As noted by the ALJ, two months after her accident all of her fractures had healed properly. (R. 260.) The treating physician, Dr. Herzeworm, noted she had full range of motion in her fingers, 100 degrees of motion in her elbow and was neurologically intact. (Id.) The Plaintiff has acknowledged her bones "healed good." (Dkt. No. 34 at 29.) The Plaintiff underwent physical therapy following her surgeries and told her physical therapist she had "no pain." (R. 280.) The Plaintiff went to the hospital for shoulder pain on April 28, 2009. (R. 308.) She was given a note stating she could return to work the following day. (Id.) Dr. Hurzewurm found her wrist was healed and her shoulder had a "grade 1 impingement." (R. 309.) The physician prescribed occupational therapy for her rotator cuff. (Id.) The consulting physician found on February 14, 2012, that her right shoulder had a full range of motion, her right elbow had a full range of motion and a 10 percent reduced range of motion in her right wrist. (R. 352.) Otherwise, the Plaintiff had no limitations at all. (Id.) Her right wrist was x-rayed when a cyst was removed from her left wrist in March of 2012. (R. 357.) At that time, her right wrist had "slight tenderness" and some early arthritic changes were noted. (Id.) The physician suggested she take Tylenol or Motrin. (Id.)

In her Brief and subsequent filings with this court, the Plaintiff alleges far greater disabilities than she testified to at her disability hearing. The Plaintiff now claims she suffers from pain in her back, neck, feet, and a certain vein in her leg while pregnant. (Dkt. No. 31 at 17.) She did not testify to any of these alleged disabilities at her hearing even when prompted if she wanted to say anything else. (R. 47.) She now alleges, in complete contradiction of her hearing testimony, that she "cannot carry light objects over a pound or two for over a couple minutes." (Id. at 23; 27.) The Plaintiff states that the consultative physician's assessment is simply "untrue." (Id. at 39.) She provided no medical evidence to support her allegation. The

Plaintiff argues she does all of the housework in her home because she has "no choice." (R. 17.) This court is limited in reviewing the Commissioner's decision to ensure it is supported by substantial evidence and no errors of law were made. If the Plaintiff now wishes to allege greater disabilities than she originally alleged, her remedy is to re-apply for disability.[2]

### 2. The ALJ's Determination of Severe Impairments

Substantial evidence supports the ALJ's determination of the Plaintiff's severe impairments in Step Two of the sequential process, and this court recommends the ALJ's decision be affirmed. The ALJ found the Plaintiff to have the following severe impairments: "multiple fractures of the right arm; and right rotator cuff injury." (R. 13.) A severe impairment is one that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. The Plaintiff has the burden to prove that she suffers from a severe impairment. Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987).

The Plaintiff's arguments that she had more severe impairments than found by the ALJ are based on the new allegations of pain and disability alleged in her filings with this court. Her claims of pain in her back, neck, feet, and a certain vein in her leg while pregnant were not raised

---

[2] The Plaintiff's filings with this court are not "new evidence" under 42 U.S.C. § 405(g). The "new" assertions by the Plaintiff are her own opinions and statements. She has not provided any new medical evidence or opinion. Additionally, the Plaintiff has failed to show "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id. She had ample opportunity to testify and submit evidence before the ALJ.

before the ALJ or Appeals Council.  (Dkt. No. 31 at 17.)  The ALJ's assessment of the Plaintiff's disabilities was supported by substantial evidence based on the evidence in the record and her testimony as discussed *supra*.

### 3. The ALJ's Assessment of the Plaintiff's Testimony Credibility

"The determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig, 76 F.3d at 593, 595.  Factors relevant to assessing a claimant's symptoms apart from objective medical evidence include "daily activities," "[t]he location, duration, frequency, and intensity of…pain or other symptoms," "[p]recipitating and aggravating factors," medications, and frequency.  20 C.F.R. § 404.1529(c)(3).  The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence."  Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).

The ALJ properly followed the two step process to assess the Plaintiff's credibility.  The ALJ found that the "medical evidence of record fails to demonstrate that the claimant's arm and shoulder injuries limit her work functionality to the extent she alleged."  (R. 16.)  As reviewed *supra*, the Plaintiff's testimony, her medical records, and the findings of the consulting physician all support the ALJ's decision.

### 4. Other Allegations of Error by the Plaintiff

The Plaintiff alleges that the ALJ erred by assessing the Plaintiff under the DIB and SSI code sections that pertain to children, and she is not a child.  (Dkt. No. 31 at 2-4.)  The Plaintiff is mistaken.  The ALJ found the Plaintiff was "not disabled under sections 216(i) and 223(d)" for DIB and "not disabled under section 1614(a)(3)(A)" for SSI.  (R. 17.)  These code sections are the appropriate sections for the Plaintiff.  The ALJ did not err.

The Plaintiff argues the ALJ erred by finding that her automobile accident occurred in March of 2008.  (Dkt. No. 31 at 5.)  The Plaintiff is correct that the ALJ stated her accident was in March of 2008.  (R. 15.)  This error is harmless.  The ALJ correctly stated her disability onset date was August 25, 2008.  ( R. 11, 13, 16.)  The ALJ never mentioned any sort of delay between March and August.  The March date did not factor into the ALJ's reasoning at all.  The burden of showing an error is not harmless is on the party attacking the agency's determination.  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).  The Plaintiff has not provided any evidence she was harmed by the ALJ's incorrect date.  The ALJ's error is harmless.

The Plaintiff alleges the ALJ erred by finding she had "worked as a full time manager at Subway in the last fifteen years prior to [her] application."  (Dkt. No. 31 at 12.)  She argues that this statement is not true.  However she concedes she worked at Subway in 2009 and in 2002.  (Id.)  In her job history she indicated she worked as a fast food restaurant manager from 1998 through 2002 for eight hours per day, five days per week.  (R. 172.)  This court finds that substantial evidence supports the ALJ's finding she worked as a fast food restaurant manager within the fifteen years prior to her application.

## Recommendation

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be **AFFIRMED**,

    IT IS SO RECOMMENDED.

August 6, 2015

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE